STATE OF NORTH CAROLINA v. ARLES EUCEDA-VALLE

No. COA06-898

(Filed 20 March 2007)

1. **Appeal and Error— preservation of issues—different argument on appeal—waiver**

   Although defendant contends the trial court erred by failing to dismiss the charge of intentionally maintaining a vehicle for keeping controlled substances, the merits of this argument are not reached because defendant presented a different argument on appeal than that which he argued to the trial court and thus waived this asignment of error.

2. **Search and Seizure— external canine sniff of vehicle—motion to suppress cocaine—reasonable suspicion criminal activity afoot**

   The trial court did not err in a trafficking in cocaine by transportation in excess of 400 grams, conspiracy to traffic in cocaine by transportation in excess of 400 grams, and intentionally maintaining a vehicle for the keeping of controlled substances case by denying defendant's motion to suppress evidence of cocaine discovered in the vehicle based on an external canine sniff after defendant was handed a warning ticket, because: (1) the Fourth Amendment does not give rise to a legitimate expectation of privacy in possessing illegal contraband or illegal drugs, and as such, a well-trained dog that alerts solely to the presence of contraband during a walk around a car at a routine traffic stop does

not rise to the level of a constitutionally cognizable infringement; and (2) officers had a reasonable suspicion necessary to conduct the exterior canine sniff of the vehicle based on the facts that defendant was extremely nervous and refused to make eye contact with the officer, there was a smell of air freshener coming from the vehicle, the vehicle was not registered to the occupants, and there was a disagreement between defendant and the passenger about the trip to Virginia.

3. **Conspiracy— trafficking in cocaine by transportation in excess of 400 grams—motion to dismiss—sufficiency of evidence**

The trial court erred by failing to dismiss the charge of conspiracy to traffic in cocaine by transportation in excess of 400 grams, because: (1) the State did not present substantial evidence of an agreement between defendant and the other passenger in the car; and (2) although the evidence showed the two men were seated in an automobile where cocaine was confiscated in the trunk, both men were nervous, and an oder of air freshener emanated from the vehicle, there was no evidence of conversations between the men, unusual movements or actions by defendant and/or the other man, large amounts of cash on the passenger, the possession of weapons, or anything else suggesting an agreement.

Appeal by defendant from judgments entered 11 January 2006 by Judge Donald W. Stephens in Vance County Superior Court. Heard in the Court of Appeals 21 February 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Mary Carla Hollis, for the State.*

*Paul F. Herzog, for defendant.*

LEVINSON, Judge.

Defendant (Arles Euceda-Valle) appeals judgments entered upon his convictions for trafficking in cocaine by transportation in excess of 400 grams; conspiracy to traffic in cocaine by transportation in excess of 400 grams; and intentionally maintaining a vehicle for the keeping of controlled substances. We find no error in part and reverse in part.

The pertinent facts may be summarized as follows: Officer S.R. Spence of the Henderson Police Department testified that on 20 April

2005, at approximately 9:00 a.m., he observed a 1996 Nissan Maxima traveling north on Interstate 85. He believed the vehicle was exceeding the posted speed limit of 65 miles per hour and was following another vehicle too closely. Spence pulled his patrol unit behind the vehicle and ascertained that it was traveling 71 miles per hour. Spence also received information from "communications" that the vehicle was registered to an individual residing in Graham, North Carolina. Spence initiated a vehicle stop.

Spence approached the vehicle on the passenger side and asked defendant, the driver, for his license and the vehicle registration. Defendant's license indicated that he lived in Burlington, North Carolina. The Nissan was registered to Fabricio Sosa Valle. The car's passenger was later identified as Nelson Gallo-Barahona (Barahona). In response to Spence's inquiry regarding ownership of the vehicle, defendant replied that it belonged to "a friend . . . Frabricio." Spence further testified that defendant and Barahona were extremely nervous, to the point that both men's shirts were "bouncing off" their chests. And Barahona would not look at Spence during the traffic stop. In addition, there were several empty Red Bull (energy drink) cans inside the Nissan, and Spence smelled a strong odor of air freshener emanating from inside the vehicle.

Spence requested that defendant have a seat in the patrol car. Spence continued to observe that defendant was "overly nervous" and that the carotid artery in his neck was "beating profusely." Due to defendant's nervous behavior, Spence contacted Deputy W.R. Parrish of the Vance County Sheriff's Department and requested that he assist with the traffic stop. Defendant would not look at Spence when they conversed. Defendant informed Spence that he had been in possession of the car for two to three days. Defendant also stated he and Barahona were traveling to Richmond, Virginia and that the two would be there for one day.

When Parrish arrived, Spence was in the process of writing defendant a warning ticket for speeding. Spence then handed the ticket to defendant. When defendant attempted to exit Spence's patrol unit, Spence told defendant to remain in the car while he spoke with Parrish. The officers decided to conduct an exterior canine sniff by "Argo," a specially trained police canine under Parrish's supervision.

Argo "alerted" at the driver's side door; driver's side rear bumper; and on the passenger side. Parrish then placed Argo inside the car,

and he alerted to the base of the rear seat. Based upon the alerts, the officers conducted a search of the Nissan and located ten cellophane packages on top of and around the spare tire under a mat in the trunk. The packages were wrapped in layers of fabric softener sheets and were later determined to consist of 4.98 kilograms of cocaine hydrochloride.

Defendant was convicted of trafficking in cocaine by transportation in excess of 400 grams, conspiracy to traffic in cocaine by transportation in excess of 400 grams, and intentionally maintaining a vehicle for the keeping of controlled substances. Defendant now appeals.

[1] In defendant's first argument, he contends that the trial court erred by failing to dismiss the charge of intentionally maintaining a vehicle for keeping controlled substances. Specifically, defendant asserts that the State failed to present substantial evidence indicating that defendant had used the vehicle for keeping the cocaine for a sufficient duration of time.

N.C. Gen. Stat. § 90-108(a)(7) (2005) provides, in pertinent part, that:

[i]t shall be unlawful for any person . . . [t]o knowingly keep or maintain any . . . vehicle, . . . which is resorted to by persons using controlled substances in violation of this Article for the purpose of using such substances, or which is used for the keeping or selling of the same in violation of this Article.

We do not reach the merits of this argument because defendant presents a different argument on appeal than that which he argued to the trial court. See State v. Sharpe, 344 N.C. 190, 194, 473 S.E.2d 1, 5 (1996) (cannot "swap horses" between courts). Accordingly, "[w]hen a party changes theories between the trial court and an appellate court, the assignment of error is not properly preserved and is considered waived." State v. Shelly, 181 N.C. App. 196, 206, 638 S.E.2d 516, 524 (2007) (defendant may not change arguments concerning his "motion for judgment of acquittal"). In the present case, defendant's motion to dismiss at trial was based upon his contention that he did not have an "ownership interest [in the vehicle] short of possession," and because he had no actual knowledge that there was a controlled substance in the vehicle. However, on appeal, defendant argues the trial court erred by denying his motion to dismiss because the State failed to prove that he possessed the Nissan with the cocaine in the

trunk for a substantial period of time. Accordingly, as defendant presents a different theory to support his motion to dismiss than that he presented at trial, this assignment of error is waived. *See Shelly*, 181 N.C. App. at 206, 638 S.E.2d at 524 (defendant argued lack of premeditation and deliberation at the trial level, but argued a *corpus delicti* theory on appeal).

[2] Defendant next contends that the trial court erred by denying his motion to suppress the evidence of the cocaine discovered in the vehicle. Specifically, defendant asserts that the trial court's findings of fact made after the suppression hearing fail to support its legal conclusions that the exterior canine sniff was conducted in accordance with his Constitutional protections.

> An appellate court accords great deference to the trial court's ruling on a motion to suppress because the trial court is entrusted with the duty to hear testimony (thereby observing the demeanor of the witnesses) and to weigh and resolve any conflicts in the evidence. Our review of a trial court's denial of a motion to suppress is strictly limited to a determination of whether [its] findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion. However, the trial court's conclusions of law are reviewed *de novo* and must be legally correct.

*State v. Hernandez*, 170 N.C. App. 299, 303-04, 612 S.E.2d 420, 423 (2005) (internal quotation marks and citations omitted). As defendant has not specifically assigned error to the trial court's findings of fact, those findings are binding on appeal, and the sole question for this Court is whether the trial court's findings support its conclusions of law. *State v. Cheek*, 351 N.C. 48, 63, 520 S.E.2d 545, 554 (1999).

> The relevant findings of fact follow:

> 4. That Officer Spence approached the vehicle and determined that the defendant was the driver and that the vehicle was not registered to the defendant. He also determined that the driver and the occupant did not speak English very well. He also observed a strong smell of air freshener in the vehicle. And he observed that both the driver and the occupant were very nervous.

> 5. Officer Spence asked the defendant to step to his vehicle. The defendant continued to be very nervous. After determining that the vehicle—that the Nissan vehicle did not belong to the defend-

ant and that the defendant had been in possession of that vehicle for only a few days, Officer Spence called for Deputy Parrish with the canine dog, Argo to join him at that location.

6. . . . Immediately after writing the traffic warning ticket Officer Spence instructed the defendant to remain in his vehicle while Deputy Parrish walked the dog, Argo, around the exterior of the Nissan vehicle.

. . . .

10. . . . Officer Spence requested the canine unit to do a walk-around of the exterior of the Nissan vehicle after writing the traffic warning ticket and after giving the ticket to the defendant and after instructing the defendant to remain in his control—his patrol vehicle. Based upon certain factors, including: that the car was not owned or registered to the driver or the passenger; that numerous cans of Red Bull were in the vehicle indicating the driver may have traveled some distance and consumed these beverages to stay alert; that there was a single key in the ignition; that there was a strong odor of air freshener in the vehicle; that the occupants of the vehicle were very nervous and there appeared to be some confusion between the occupants as to specifically where they were going in Virginia.

The pertinent conclusions of law follow:

2. [T]hat under the totality of the circumstances Officer Spence had a reasonable and articulable suspicion that there may be some criminal activity afoot, including the possibility of possession of controlled substances sufficient to temporarily detain the defendant for a brief period to permit a drug detection dog, who was already on the scene, to walk around the Nissan vehicle for the purpose of sniffing the vehicle for the presence of drugs;

. . . .

5. That the delay occasioned by the drug dog's walk around the vehicle was brief and the dog was on the scene before Officer Spence had completed his traffic investigation and had written the traffic warning citation;

6. That the conduct of Officer Spence and Parrish was not unlawful or unreasonable and did not violate any statutory constitutional right of the defendant in the traffic stop, in the

canine sniff—vehicle sniff, in the search of the trunk and in the seizure of the drugs located in the trunk and in the arrest of the defendant.

The Fourth Amendment to the federal constitution provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. Article I, Section 20 of the North Carolina Constitution provides that:

General warrants, whereby any officer or other person may be commanded to search suspected places without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence, are dangerous to liberty and shall not be granted.

The United States Supreme Court has articulated "that the Fourth Amendment does not give rise to a legitimate expectation of privacy in possessing contraband or illegal drugs, and as such, a well-trained dog that alerts solely to the presence of contraband during a walk around a car at a routine traffic stop 'does not rise to the level of a constitutionally cognizable infringement.'" *State v. Branch*, 177 N.C. App. 104, 107, 627 S.E.2d 506, 508-09 (quoting *Illinois v. Caballes*, 543 U.S. 405, 409, 160 L. Ed. 2d 842, 847 (2005)), *dis. review denied*, 360 N.C. 537, 634 S.E.2d 220 (2006). However, in order to further detain a suspect from the time the warning ticket is issued until the time the canine unit arrives, there must be "reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot." *State v. McClendon*, 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999). "The specific and articulable facts, and the rational inferences drawn from them, are to be 'viewed through the eyes of a reasonable, cautious officer, guided by his experience and training.'" *Hernandez*, 170 N.C. App. at 308, 612 S.E.2d at 426 (quoting *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994)). "In determining whether the further detention was reasonable, the court must consider the totality of the circumstances." *Id.* (citing *State v. Munoz*, 141 N.C. App. 675, 682, 541 S.E.2d 218, 222 (2001)).

Because the canine sniff occurred after defendant was handed the warning ticket, we analyze this case in accordance with *McClendon*. We hold that the trial court's findings of fact support its legal conclusion that law enforcement had a reasonable suspicion necessary to conduct the exterior canine sniff of the vehicle. De-

fendant was extremely nervous and refused to make eye contact with the officer. In addition, there was smell of air freshener coming from the vehicle, and the vehicle was not registered to the occupants. And there was disagreement between defendant and the passenger about the trip to Virginia. We conclude that these facts support a basis for a reasonable and cautious law enforcement officer to suspect that criminal activity is afoot. *See McClendon*, 350 N.C. at 637, 517 S.E.2d at 133 (initial confusion as to owner of the vehicle, extreme nervousness, refusal to make eye contact and other circumstances supported reasonable suspicion); *see also Hernandez*, 170 N.C. App. at 309, 612 S.E.2d at 426-27 (reasonable suspicion supported by nervousness and strong odor or air freshener in vehicle). This assignment of error is overruled.

**[3]** In defendant's final argument, he contends that the trial court erred by failing to dismiss the charge of conspiracy to traffic in cocaine by transportation in excess of 400 grams. In particular, defendant asserts that the State failed to present substantial evidence that defendant and Barahona entered into an express or implied agreement to traffic in the cocaine. This argument has merit.

When ruling on a motion to dismiss, "the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996).

> Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence. The trial court must also resolve any contradictions in the evidence in the State's favor. The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility.

*State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255-56 (2002) (internal quotation marks and citations omitted). " '[T]he rule for determining the sufficiency of evidence is the same whether the evidence is completely circumstantial, completely direct, or both.' " *State v. Crouse*, 169 N.C. App. 382, 389, 610 S.E.2d 454, 459 (quoting *State v. Wright*, 302 N.C. 122, 126, 273 S.E.2d 699, 703 (1981)), *disc. review denied*, 359 N.C. 637, 616 S.E.2d 923 (2005).

"A criminal conspiracy is an agreement, express or implied, between two or more persons to do an unlawful act . . . , and a conspiracy generally is established by a number of indefinite acts, which taken collectively point to the existence of a conspiracy." *State v. Burmeister*, 131 N.C. App. 190, 199, 506 S.E.2d 278, 283 (1998) (citations omitted). "In order to find defendant is guilty of conspiracy to traffic in cocaine in the instant case, the State must prove that defendant entered into an agreement to traffic by possessing cocaine weighing at least 28 grams and less than 200 grams, and intended the agreement to be carried out at the time it was made." *State v. Jenkins*, 167 N.C. App. 696, 700, 606 S.E.2d 430, 433 (citing *State v. Diaz*, 155 N.C. App. 307, 319, 575 S.E.2d 523, 531 (2002), *aff'd*, 359 N.C. 423, 611 S.E.2d 833 (2005). "In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice." *State v. Morgan*, 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991) (citing *State v. Bell*, 311 N.C. 131, 141, 316 S.E.2d 611, 617 (1984)).

In the instant case, we conclude the State did not present substantial evidence of an agreement between defendant and Barahona. Taken in the light most favorable to the State, *Crawford*, 344 N.C. at 73, 472 S.E.2d at 925, the evidence shows essentially that defendant and Barahona were seated in an automobile where cocaine was confiscated in the trunk; that both men were nervous; and that an odor of air freshener emanated from the vehicle. There was no evidence of, *e.g.*, conversations between the two men; unusual movements or actions by defendant and/or Barahona; large amounts of cash on Barahona; the possession of weapons; or anything else suggesting an agreement. "While conspiracy can be proved by inferences and circumstantial evidence, it 'cannot be established by a mere suspicion, nor does a mere relationship between the parties or association show a conspiracy.' " *State v. Benardello*, 164 N.C. App. 708, 711, 596 S.E.2d 358, 360 (2004) (quoting *State v. Massey*, 76 N.C. App. 660, 662, 334 S.E.2d 71, 72 (1985)); compare *Jenkins*, 167 N.C. App. at 701, 606 S.E.2d at 433 (evidence sufficient to support a charge of conspiracy when defendant was discovered in a truck with two other men, illegal narcotics were found sitting between defendant and one of the other men, one of the men had a large amount of cash in his lap and a pistol was discovered inside the passenger compartment). We agree with defendant that there was insufficient evidence to support the conviction for conspiracy to traffic in cocaine by transportation in excess of 400 grams, and therefore reverse the judgment for this offense.

No error in part, reversed in part.

Judges McCULLOUGH and BRYANT concur.